.EIKEL & BRENSTEDT v. FRELICH & BADT.

(No. 2062, Op. Book No. 2, p. 378.)

APPEAL from McLennan County.   Opinion by QUINAN, J.

§ 1117. *Garnishment; liens; conditional debt.* Appellants garnished appellees upon a debt due by one D. T. Searcy to appellants. Appellees answered that they had made a contract with Searcy to erect for them a house for a specified sum of money, within a specified time. If the house was not completed within the time, Searcy was to lose $5 per day for every day the house remained unfinished. Before the completion of the house, and before the service of the garnishment, appellees had paid Searcy, and had assumed the payment of lumber bills for him, amounting in the aggregate to $1,100.45, the contract price for the house being $1,300. After the service of the garnishment, but before the answer of appellees, the underworkmen and mechanics engaged in the con-

struction of the house served notice upon appellees of their claims, amounting to enough to absorb the balance due by appellees to Searcy, which claims appellees paid. The effect of appellees' answer to the garnishment was that at the date of the service of the writ upon them, and also at the date of their answer, they were not indebted to Searcy in any amount. The answer was controverted, and its statements being sustained by the evidence, the judgment of the court was for the appellees, discharging ·them from the garnishment. *Held,* the appellants, by their garnishment, acquired no lien upon the amount which might become due by garnishees to Searcy, under the contract, after the date of the service of the writ. The obligation of appellees to Searcy was contingent upon the completion of his contract. The debt from the garnishee to the defendant, in respect to which it is sought to charge the former, must be absolutely payable at present or in future, and not dependent on any contingency. If the contract between the parties be of such a nature that it is uncertain and contingent whether anything will ever be due in virtue of it, it will not give rise to such credit as may be attached, for that cannot properly be called a debt which is not certainly and at all events payable either at the present or some future period. [Drake on Attach. 551, 553.] It is very clear that at the date of the service of the writ there was no debt due from the garnishees, or which might beyond contingency become due to Searcy. Nor was there any such debt due when the material men and laborers served notice upon appellees of their claims; and by the service of the notice upon them, none could become payable to Searcy afterwards. They were bound to retain in their hands for the benefit of the mechanics or material men a sufficient amount of what they might owe Searcy, to pay those claims.

§ **1118.** *Same; credits and effects coming to hands of garnishee after service of writ.* The statute says that the garnishee shall answer what he owes at the date of

the service of the writ and the time of the answer, and forbids his paying the defendant any debt, or delivering him any effects, after the service of the writ. This provision does not in terms give the attaching creditor any preference lien upon credits or effects coming to the hands of the garnishee between the service of the writ and the answer thereto. In either case the credits or effects would be subject to the equities attached to them at the time of the accrual or acquisition. Before this debt became due or was attachable under the law, the mechanics and material men acquired an interest in it when it should become due. The appellants did not. From the time of the service of the notice upon appellees they became the debtors in effect of the mechanics and material men, and not of Searcy. There was nothing to prevent the appellees from contracting beforehand with the mechanics that if Searcy finished his contract, and they became indebted to him, they would pay them; and they were put under no obligations by the garnishment to do as much for the appellants. We think this the equitable construction of the statutes considered together. To interpret it otherwise would be to prevent the debtor in this case from finishing his contract by depriving him of the means of procuring labor or material, as what he might earn would be subject to the satisfaction of other demands. If he chose to give up the work it would benefit the creditors nothing. If, on the other hand, he proceeded to finish the building, his mechanics and material men would be expending their labor and material for the benefit of the attaching creditor, without the security for their compensation which the law designed they should have. A construction of the law leading to such unjust results we would very unwillingly give unless compelled to it by the clearest expression in the terms employed of such intent and meaning.

June 22, 1881.　　　　　　　　　　　Affirmed.